WINDSOR COUNTY, FEBRUARY TERM, 1826.

*John Bowker* vs. *Samuel Walker, Jr.*

If A enters upon land and makes permanent improvements under a written contract with B for the purchase of the land, and before completing the payment of the purchase money executes a deed to C, neither C nor his grantees, though ignorant of the agreement with B, can, in general, dispute the title of B.

THIS was an ejectment for two tracts of lands in *Chester*, one of 100 acres and the other of 20 acres, to which the defendant pleaded not guilty.  The cause was now heard upon exceptions taken and certified at a jury trial in this court at a former term.

The exceptions showed that the plaintiff relied upon a right to recover by possession; and for that purpose produced and read in evidence a vendue deed of a large tract of land, of which the premises in question formed a part, from *Waitstill Ranny* to *Ezra Sargeant*, dated June 10, 1799.  He also gave in evidence a deed dated Dec. 10, 1799 from *Ezra Sargeant* to *Timothy Thompson*, of 130 acres, including the 100 acre tract now in question, and a re-conveyance of the same from *Thompson* to *Sar-*

*geant* dated Sept. 19, 1803. He also read

in evidence a deed dated Sept. 22d 1803, from *Ezra Sargeant* to *Jabez Sargeant* of the whole tract contained in said deed from *Waitstill Ranny.*—The plaintiff called *Timothy Thompson* as a witness, who testified that he took possession and made improvements under his said purchase, and continued the same till the time of his re-conveyance to *Ezra Sargeant*, when he received payment for the land or his betterments upon it in a note signed by *Jabez Sargeant* and the plaintiff. But he also testified that his improvements were wholly upon the north side of *William's river*, and the 100 acres now sued for lies on the opposite side. The plaintiff also gave in evidence an agreement signed and sealed between himself and one *Joseph Hoar*, and witnessed by *Jabez Sargeant*, dated January 6, 1807, by which the plaintiff agreed to sell, and the said *Hoar* to purchase, the said 100 acre tract at $ 3,00 per acre. The conveyance was to be made with all the usual covenants,on or before the 1st day of January, 1810, and the payments were to be completed by that time. This agreement reserved to the plaintiff the privilege of erecting and supporting a mill dam upon the premises, and contained an express licence to *Hoar* to take immediate possession under the contract. The plaintiff also gave in evidence the following deeds of the said 100 acre tract to wit: from *Joseph Hoar* to his son *Daniel B. Hoar* dated May 13, 1816, from *Daniel B. Hoar* to *Josiah Kibling* dated Oct. 2, 1817, and from *Josiah Kibling* to the defendant dated June 10, 1818. He also gave in evidence the following deeds of the 20 acre tract in question, to wit: from *Joseph Hoar* to *Silas Jones* dated January 18, 1816, and from *Silas Jones* to the defendant,dated April 17, 1818. The plaintiff called the said *Joseph Hoar* as a witness, who testified, that at the time of entering into the aforesaid contract with the plaintiff the said 100 acre tract was entirely wild, that the agreement was drawn by *Jabez Sargeant* and left in his possession, that upon the execution of the instrument the witness took immediate possession of the land and commenced permanent improvements thereon, which have been continued and extended by himself and those claiming under him, including the defendant, ever since ;—that the several conveyances above mentioned, passing the land from himself to the defendant, were exe-

cuted at the dates aforesaid, each grantee ta-king actual possession under his deed, and that his son *Daniel B. Hoar* was acquainted with the said agreement in writing between the witness and the plaintiff, but that he had no reason to believe that *Kibling* or the defendant had any notice of it at the time of their respective purchases. He also testified that until he executed the deed to his son, he had occupied the land claiming it as his own.

As to the 20 acre tract in question this witness testified, that the plaintiff erected a saw mill on this tract, which had run down about two years before the witness entered into the contract for the purchase of the 100 acre tract, and that a son of *Jabez Sargeant* carried away the mill irons; that some time after the making the written contract aforesaid, and when the plaintiff was about to remove to *Canada*, he remarked to the witness that a certain tract of about 40 acres, adjoining the 100 acres aforesaid, and including the 20 acres in question, ought to belong to the witness' farm, and told the witness to take possession of it, and when he could pay for it, he the plaintiff would give him a deed of it—that the witness occasionally took timber therefrom till he deeded the 20 acres to *Jones* as above mentioned.

This witness also testified that he paid the plaintiff in labor and in a horse about seventy dollars, in part payment for the two tracts aforesaid. There was no evidence that *Jones*, *Kibling* or the defendant at the time of their respective purchases had notice that the plaintiff had a claim to any of the land in question ; and no title adverse to that of the parties of record was shown to exist or to be asserted by any person. The plaintiff here rested his case ; and the court inclining to decide that he had not made a sufficient case upon which to recover, he submitted to a nonsuit, with leave to except to the opinion of the court and move to set the nonsuit aside.

*Hutchinson* and *Marsh*, for the plaintiff.

1. The first question is whether the plaintiff shows a sufficient prior possession to entitle him to recover against a stranger.

2. Whether such showing is good against the defendant claiming under another, who was put in possession by the plaintiff, defendant not knowing of the plaintiff's claim.

Under the first point it is proper to remark
that it appears by the contract between the
plaintiff and *Joseph Hoar*, and by the testimony of the latter, that
he entered under the plaintiff on the 100 acre lot, and under the
written contract, and again by the testimony of the same witness,
that he entered on the 20 acre lot by virtue of a parole contract
with the plaintiff. The law is, therefore, clear that if *Hoar* did not
perform the contract on his part, he is considered as holding un-
der the plaintiff and cannot dispute his title ; but must yield up
the possession to him of whom he received it, and the plaintiff
may recover by virtue of his prior possession.

{ Windsor, Feb. 1826.
{ *Bowker* vs. *Walker*.

Indeed, the possession of *Hoar* is the possession of the plain-
tiff, and if the statute has run, it has run in favor of plaintiff,
and his title is complete.

In 4 *Johns. Rep.* 230, *Jackson* vs. *Bond*—Where A went into
possession under an agreement to purchase, and C afterwards
took possession under an agreement with A for the purchase, the
possession of C was holden not to be adverse to the title of B.

Defendant shows no title, and plaintiff's prior possession is
good against a stranger to all title.

In 10 *Johns. Rep.* 338, *Smith* vs. *Lorrillard*—It was decided
that "It was not necessary that plaintiff should, in every case, show
a possession of 20 years or a paper title : but a possession for
a less period will form a presumption of title sufficient to put
the tenant on his defence."

Again, "A prior possession of less than 20 years under a claim
or assertion of title will prevail over a subsequent possession of
less than 20 years, where no other evidence of title appears on
either side." S. C.

"An acknowledgment by defendant that he went into posses-
sion under lessor of the plaintiff is sufficient to enable the plain-
tiff to recover." 3 *Johns. Rep.* 223, *Jackson* vs. *Dobbin.*—1
*Caine's Rep.*444.—7 *Johns.Rep.* 186.—10 *Johns. Rep.* 358; *S.
P.*

These authorities seem sufficient to show that *Hoar* could not
resist the plaintiff's title.

Plaintiff claimed title by the act of contracting with *Hoar* for
the sale of the land.

Windsor, Feb. 1826. } We contend that defendant, claiming under
*Bowker* vs. *Walker.* } one who held under the plaintiff, stands in the same relation and cannot resist his title.

In 3 *Johns. Rep.* 499, *Jackson* vs. *Scissam,* it was said, an acknowledgment of one under whom defendant claims that he came into possession under the plaintiff's lessor, is conclusive evidence as to his tenancy."

In 2 *T.R.*53, *Davis* vs.*Pierce,* it was decided that "the declaration of tenants after their death, that a piece of land was parcel of the estate which they occupied, and proof that they exercised acts of ownership not resisted by contrary evidence, is decisive," and this against a third person.

So in 2 *Johns. Rep.*22, *Jackson* vs.*Hazen,* it was decided "that where the plaintiff had been in peaceable possession for three years and the defendant entered afterwards without colour of right, that such possession was sufficient to enable the plaintiff to recover in ejectment.

In 2 *Caine's Rep.*215 *Jackson* vs.*Whitford,* one claiming under another who held a lease from the plaintiff, cannot dispute his title.

The court directed a nonsuit because the defendant did not know in what relation *Hoar* stood to the plaintiff—that is—he did not know of the contract between *Hoar* and the plaintiff.— But it was his duty to have acquainted himself with the title under which his vendor claimed, or to have secured himself with proper covenants. It was not surely the duty of the plaintiff to have acquainted him with these facts.

The defendant, we think, stands in the same and in no worse case than every man who purchases of another having no title.

The opinion of the court in directing a nonsuit, we think was wrong, and hope it will be set aside.

*Washburn,* for defendant. It is contended by the defendant,

1. That *John Bowker,* the plaintiff, never had any title or possession of the demanded premises.

2. *Joseph Hoar* could not be considered as holding the premises, as tenant to said *Bowker,* but in his own right.

3. *A fortiori, Samuel Walker,* jr., the defendant, who made an absolute purchase of the said premises, and paid the full value

thereof, without any knowledge of the pretend- { Windsor, Feb. 1826.

ed claim of said *Bowker*, cannot be consider- } *Bowker* vs. *Walker*.

ed as holding the premises as tenant to said *Bowker*; and therefore said *Bowker*, who had no prior title or possession, cannot sustain an action of ejectment against him.

ROYCE, J. delivered the opinion of the Court.

The general question submitted is, whether the plaintiff at the trial, made out a case which, if uncontradicted, and not at all weakened by evidence on the other side, would entitle him to recover. The original title to the premises in question does not appear. *Ezra Sargeant*, having a colour of title under *Ranny's* deed to a tract including these premises, sold 130 acres thereof to *Timothy Thompson*, who entered and made improvements upon that part of his purchase lying north of the stream called *William's river*; the part on the south side, and being the 100 acres now sued for, remaining entirely wild. A difficulty is here presented in determining how far this possession affected the 100 acres, because we are not informed by the case whether the whole purchase of *Thompson* was surveyed, or inclosed within visible lines or monuments. That he claimed the 100 acres is certainly to be inferred from his purchase and sale of the same. In 1803, *Thompson* re-conveyed to *Ezra Sargeant*, who immediately deeded to *Jabez Sargeant* the whole tract claimed under *Ranny's* deed. *Jabez Sargeant* thus acquired a colour of title, and the possession of *Thompson*, whatever it was. At the same time a connexion of some sort is discovered between *Jabez Sargeant* and the plaintiff, in relation to this property; the plaintiff having joined with *Sargeant* in the note to *Thompson*, and erected a saw mill on the 20 acres in dispute, which was doubtless done with *Sargeant's* consent. Under these circumstances the agreement between the plaintiff and *Joseph Hoar* was concluded under their hands and seals in January, 1807. In this transaction the consent and co-operation of *Sargeant* are distinctly seen; he having drawn up and witnessed the contract, and consented to hold it for the benefit of the parties. He could never after this have interfered to the prejudice of *Hoar* in violation of that agreement.—The entry of *Hoar* was by express permission of the plaintiff

under this agreement to purchase; and that he considered his possession as subject to the contract of purchase appears from the payments which he made. It follows in view of all this that he could not have obliged the plaintiff to show a title to the land in an action for the possession. He could only fulfil his contract or surrender the possession. In saying this we do not go the whole extent of the cases cited for the plaintiff. The plaintiff must be equally entitled to recover against this defendant, unless his situation is different from that of *Hoar*. He is understood to have purchased in good faith for a valuable consideration, and without notice of any agreement or connexion between *Hoar* and the plaintiff. And hence it is contended that the agreement has no influence upon the property in the hands of the defendant, whatever it might have had while the possession remained with *Hoar*. It is certain, however, that the possession of *Hoar* is the main ground, if not the sole origin, of the defendan's title ; and that possession was subservient to an acknowledged paramount right of the plaintiff. This being the character of the possession till within a few months of the defendant's purchase, it is more than we can say, from what has yet appeared in the case, that in that short period its character was wholy changed.

We are not to enquire whether the agreement could be rendered invalid by reason of fraud, since no such inference necessarily results from the facts now in the case ; nor whether a question may exist for presuming it abandoned or discharged by the plaintiff, from a conscious inability to make the title which he had stipulated to give. No such ground is yet disclosed, and if it were, the jury and not the court should make the presumption. We therefore think that the nonsuit was improperly advised and that a new trial must be granted.

We have come to this result chiefly in reference to the larger tract demanded, and no opinion is expressed whether a new trial would be granted, were the 20 acres the only subject of dispute. New trial granted.

HUTCHINSON, J. being of counsel in the cause did not sit in the trial.

*Hutchinson* and *Marsh*, for plaintiff.

*Washburn*, for defendant.